## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALEAK RAHEEM CRAWFORD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| ANDREW SAUL, | : | |
| Commissioner of the Social | : | |
| Security Administration | : | NO. 20-124 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                July 21, 2020

Maleak Raheem Crawford ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded so that the ALJ can correct the errors he has made and evaluate properly Plaintiff's residual functional capacity.

### I.    PROCEDURAL HISTORY[1]

On October 25, 2016, Plaintiff applied for DIB and SSI, alleging disability, because of physical and mental health impairments, beginning on September 5, 2016. R. 10. The claim was denied, initially, and Plaintiff requested a hearing. *Id.* On November 1, 2018, Plaintiff appeared before Mark Baker, Administrative Law Judge ("the ALJ"), for a video hearing. *Id.* Plaintiff and his attorney participated from Philadelphia; the ALJ and the vocational expert, Adina P. Leviton,

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply), and the administrative record. ("R.").

("the VE") were in Richmond, Virginia. *Id.* On January 14, 2019, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 10-20. The Appeals Council denied Plaintiff's request for review, on December 10, 2019, R. 1-3, making the ALJ's decision the Commissioner's final decision.

Thereafter, Plaintiff sought judicial review in this court. The parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.  FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on August 27, 1979, R. 18, was 39 years old at the time of the administrative hearing. His past work, as a delivery truck driver, was last performed in 2016. R. 62. Plaintiff has two minor children, but does not live with them;[3] instead, he lives with his aunt. R. 42.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g). 416.920(g).

[3] Plaintiff's daughter lives a block away from him, so he sees her every day; he sees his son every other weekend. R. 42-43.

B.     Plaintiff's Testimony

At the November 1, 2018 administrative hearing, Plaintiff testified about his physical limitations, which are most significant, and his alleged mental health ailments. R. 42-61. As will be seen, most of Plaintiff's physical ailments are caused by his cervical spine problem.[4] Plaintiff's overall condition worsened significantly in 2016, when arm and leg weakness began to limit his ability to perform work duties and his urinary incontinence became persistent. R. 43. Plaintiff left his last full-time job as a truck driver, because the driving motions became too painful for him and he required too many bathroom stops to perform the job adequately. R. 44.

The medication Plaintiff takes to treat his urinary incontinence it is not effective; he must wear Depends (diapers for adults). R. 45. Plaintiff's urologist has told him that his incontinence is caused by his cervical spine problem. R. 60. Plaintiff suffers so much leakage, that he must change his Depends approximately five times each day. R. 46. During the administrative hearing, Plaintiff asked to be excused so he could use the bathroom. R. 63-64. Plaintiff also suffers from bowel problems. R. 48. After eating, he often feels pain and needs to go to the bathroom, but is only able to defecate once or twice a week. *Id.* Plaintiff had a pending appointment to see a gastroenterologist about this problem for December 2018, the month after the hearing. *Id.*

Plaintiff had cervical spine surgery in December 2017, R. 46, which was less than a year before the hearing. He believes his overall condition has worsened since the surgery, because he has decreased range of motion in his neck and his other, related conditions have not improved. R. 47. For example, his urinary incontinence has not improved; hence, his urologist suggested a surgical procedure to implant a device in his bladder. R. 48. That surgery has been delayed, because Plaintiff may first need another cervical surgery. *Id.*

---

[4] The record contains a September 7, 2018 treatment note which explicitly states that Plaintiff's leg, bladder and bowel problems are due to his cervical myelopathy. R. 597.

Plaintiff has weakness and numbness in his arms and right leg; he often cannot feel his toes and falls to the ground, now he uses a cane to walk every day. R. 49. Plaintiff's doctor recommended that he use a cane and, post cervical surgery, the hospital supplied a cane. *Id.* The last time Plaintiff tried to mow his lawn, his right leg gave out, he stumbled, and broke his fall on the lawnmower. R. 58. Although Plaintiff can feed himself, he cannot pick up coins, button his shirt or tie his shoes, due to weakness in his fingers. R. 49-51,[5] 55-56. In order to prevent falling while showering, he sits on a bench. R. 56. Plaintiff's hands shake slightly every day, but, approximately three times a week, his hands shake uncontrollably. R. 59. Doctors relate his hand shaking to his cervical spine problem. R. 60.

Additionally, Plaintiff suffers from depression. R. 51. Although Plaintiff previously underwent limited therapy, at the time of the hearing, he was not taking medication or any treatment for this condition. *Id.* at 51-52.

Plaintiff no longer attends church services; he cannot ambulate quickly and feels embarrassed by the frequency of his bathroom trips. R. 52. Occasionally, he watches sporting events or YouTube videos with a friend; they often smoke cigars while socializing. R. 52, 57. Plaintiff no longer smokes marijuana, because his surgeon advised him that habit would retard healing after his cervical surgery. R. 57-58.

Plaintiff does not sleep through the night; typically, he sleeps in two-hour increments. R. 56. When awakening in the morning, Plaintiff often feels disoriented and takes his time going downstairs to microwave breakfast. *Id.* After eating, he typically watches television. *Id.* Some days, Plaintiff goes to the bus stop to pick up his daughter from school. *Id.*

---

[5] The administrative record lacks a page 50.

C.   Vocational Testimony

The VE categorized Plaintiff's job as a delivery truck driver as medium,[6] semi-skilled[7] work.  R. 62.  Next, the ALJ asked the VE to consider a person:

> the same age, education, and work experience as [Plaintiff] with the following limitations.  Able to occasionally lift up to 20 pounds, frequently up to 10 pounds.  Able to sit, stand, and walk six hours each in an eight-hour day.  Occasionally climb ramps and stairs.  Never climb ladders, ropes, scaffolds.  Occasionally balance, frequently stoop, frequently kneel, frequently crouch, occasionally crawl.  Occasional exposure to humidity and wetness.  Occasional exposure to extreme cold.  Occasional exposure to dust, odors, fumes, and pulmonary irritants.  No exposure to unprotected heights.  No exposure to moving mechanical parts.  Handling and fingering, that's gross and fine manipulation, are each limited to frequent with the bilateral upper extremities, and operation of foot controls is limited to frequent with the right lower extremity.  Could an individual with these limitations perform the claimant's past work as it was actually or customarily performed?

R. 63.  The VE responded that this person could not perform Plaintiff's past work.  *Id.*  However, the individual could perform the following light[8] jobs:  (1) inspector, 50,000 positions nationally; (2) sorter, 60,000 positions nationally; and (3) housekeeper, 250,000 positions nationally.  R. 64-65.

Next, the VE was asked to consider the same person, with the additional limitation of being off-task five minutes every hour of the work-day.  R. 65.  The VE responded that she was uncertain if this additional limitation would preclude working in a competitive environment.  *Id.*  A limitation of only three minutes each hour would not be preclude all work and the person could perform the three light jobs the VE had previously identified.  *Id.* at 65-66.  Finally, if the individual would be off-task for ten minutes every hour, he or she could not perform any work.  *Id.* at 66.

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[7] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. §§ 404.1568(b), 416.968(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

In response to a question from Plaintiff's attorney, the VE stated that, if an individual's incontinence causes him to urinate on himself several times a day – necessitating bathroom trips to change – he could not sustain employment. R. 67. Finally, the VE testified that, if a person routinely missed one to two days of work each month, he could not sustain employment. *Id.*

## II.   THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.  [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

2.  [Plaintiff] has not engaged in substantial gainful activity since September 5, 2016, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.   [Plaintiff] has the following severe impairments: asthma, cervical spine stenosis, cervical myelopathy, status post cervical fusion, irritable bowel syndrome (IBS), and urinary incontinence (20 CFR 404.1520(c), 416.920(c)).

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift up to twenty pounds occasionally and ten pounds frequently; he can sit for up to six hours, stand for up to six hours, and walk for up to six hours in an eight-hour workday; he can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, frequently stoop, kneel, and crouch, and occasionally crawl; he can tolerate occasional exposure to humidity, wetness, extreme cold, dust, odors, fumes, and pulmonary irritants; he can have no exposure to unprotected heights or moving mechanical parts; handling and fingering for gross and fine manipulation are limited to frequent with the bilateral upper extremities; operation of foot controls is limited to

       frequent with the right lower extremity; in addition to normal breaks, he will be off task an additional three minutes every hour.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born on August 27, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from September 5, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 12-15, 18-20.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*,

7

181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.   Review of the Administrative Law Judge's Decision

Applying the sequential analysis process, the ALJ determined that, although Plaintiff could not perform his past relevant work, he could perform several other light jobs that exist in the national economy; hence, Plaintiff was not disabled. R. 10-20. Plaintiff contends that the ALJ erred when evaluating his residual functional capacity ("RFC"), because he failed to consider properly Plaintiff's: (1) need to use a cane to walk, (2) limitations caused by urinary incontinence, (3) mental health limitations, (4) and hand limitations. Pl. Br. at 2-12. The Commissioner counters that the ALJ afforded proper consideration to all of Plaintiff's alleged ailments when evaluating his RFC. This court finds that the ALJ committed reversible error by failing to incorporate Plaintiff's limitations due to his need to use a cane to walk, urinary incontinence and hand weakness, into the RFC assessment.

1.   The ALJ Erred Reversibly by Omitting Plaintiff's Need to use a Cane from the RFC Assessment

Plaintiff maintains that the ALJ erred reversibly by failing to accept his need to use a cane and to include limitations caused by this need in the RFC assessment. Pl. Br. at 2-5. The Commissioner counters that the record does not support Plaintiff's claim that he **needs** to use a

cane to walk. Resp. at 4-5. This court finds that the ALJ committed reversible error in that the RFC fails to include limitations based on Plaintiff's need to use a cane to walk.

The ALJ discounted Plaintiff's use of a cane, because he thought that Plaintiff's use of a cane was a matter of discretion, rather than necessity. R. 17. However, the record belies this belief. First, Plaintiff testified that he has significant leg weakness and falls without warning; he even uses a bench to shower, to prevent falling. R. 49, 56, 58. Furthermore, Plaintiff testified that, after his cervical surgery in late December 2017, the hospital provided him a cane. R. 49. Moreover, numerous treatment notes of record document Plaintiff's difficulty walking, including abnormal objective test results, *see* Pl. Br. at 3 (citing R. 443-44, 456-57, 468, 518, 594, 597, 617-18), and his need for a cane. *See id.* at 4 (citing R. 423, 440, 467, 477, 490, 492, 517, 541, 553). An ALJ may not ignore record evidence which suggests a contrary conclusion, as occurred herein. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). Instead, the ALJ must provide some explanation for rejecting this evidence. *Id.* Further, the ALJ's error is not harmless, because Plaintiff's need to use a cane could very well affect his ability to perform the substantial amount of walking required to sustain light work. *See* SSR 83-10, 1983 WL 31251, at *5-*6 (explaining that light work requires the ability to stand or walk for up to two-thirds of an eight-hour workday). This case should be remanded so that the ALJ can consider, explicitly, the evidence Plaintiff has cited and, if he rejects it, explain why. If the ALJ accepts the evidence and determines that Plaintiff requires a cane to walk, he must amend his assessment of Plaintiff's RFC to account for it.

2. The ALJ Committed Reversible Error by Failing to Include Accurately Limitations Caused by Plaintiff's Urinary Incontinence in the RFC Assessment

Plaintiff maintains that the ALJ erred by failing to credit properly the limitations caused by his urinary incontinence, including his need to go to the bathroom approximately every half-hour

and, unfortunately, suffering leakage from his Depends several times per day. Pl. Br. at 5-8. The Commissioner counters that the ALJ properly accommodated the limitations caused by Plaintiff's urinary incontinence by including the need to be off-task three minutes each hour in the RFC assessment. Resp. at 5-7. The court finds that the ALJ's finding that Plaintiff would be off-task for only three minutes every hour, due to urinary incontinence, is not supported by substantial evidence.

At the administrative hearing, Plaintiff asked to use the bathroom, R. 63-64; in his decision the ALJ noted that the bathroom break occurred within 35 minutes of the hearing's start. R. 17. If that is accurate, every 70 minutes, Plaintiff will require two breaks of indeterminate length. This frequency is somewhat greater than one per hour, which is all the ALJ allowed in the RFC and hypothetical posed to the VE. The ALJ seems not to have understood that his own observations about Plaintiff's limitations belied the RFC he ultimately assessed. No reasonable person, faced with the evidence the ALJ saw and credited, would conclude that Plaintiff only required one unscheduled bathroom break per hour; hence, there is not substantial evidence to support the ALJ's conclusion in this regard. On remand, the ALJ should modify Plaintiff's RFC to include the need for unscheduled bathroom breaks every 35 minutes throughout the workday and include it in a hypothetical question to a vocational expert so that the ALJ can conclude properly whether this frequency of additional breaks would totally foreclose work.

3. <u>The ALJ Afforded Proper Weight to Plaintiff's Mental Impairments</u>

Next, Plaintiff argues that the ALJ improperly failed to include any mental health limitations in the RFC assessment. Pl. Br. at 8-11. The Commissioner counters that the ALJ properly accommodated Plaintiff's non-severe mental impairments in his RFC evaluation by limiting Plaintiff to unskilled work. Resp.at 8-9. This court finds that the ALJ properly found that

11

Plaintiff's mental impairments were not severe and, since Plaintiff's mental health treatment was sparse and described no significant limitations at the hearing, the ALJ did not err in failing to include any specific mental health limitations in the RFC assessment.

First, the ALJ found, in all four of the domains of mental functioning, that Plaintiff only exhibited mild impairment. R. 13-14. As the ALJ noted, R. 14, under the Commissioner's regulations, this means that Plaintiff does not have a severe mental health impairment. 20 C.F.R §§ 404.1520a(d)(l), 416.920a(d)(1). Next, it is true that Plaintiff had received very little treatment for his depression and, at the time of the administrative hearing, was receiving no treatment. R. 52. Finally, at the hearing, Plaintiff failed to claim any work-related limitations from his alleged depression; hence, the ALJ appropriately omitted any from the RFC. *See Rutherford*, 399 F.3d at 555 (holding that the ALJ did not err by omitting from the claimant's RFC any limitations caused by medication-induced drowsiness, because Plaintiff failed to allege same).

    4. <u>The ALJ Erred Reversibly by Omitting Plaintiff's Hand Limitations from the RFC Assessment</u>

Finally, Plaintiff argues that the ALJ erred by finding that he was capable of frequent fingering and handling, despite his hand weakness. Pl. Br. at 11-12. The Commissioner counters that the ALJ properly accounted for Plaintiff's hand limitations. Resp. at 9-10. This court finds that the ALJ erred.

The record documents Plaintiff's hand weakness, even after cervical surgery R. 426, 443, 456, 477, 502-03, 517, 593-94, 617-18. Plaintiff testified that he could not button his shirts, tie his shoes, or pick up a coin. R. 49-51, 55-56. Despite this consistent record of significant hand weakness and limitation, the ALJ concluded that Plaintiff was able to finger and handle frequently, which means up to two-thirds of the time. *See* SSR 83-10, 1983 WL 31251, at *6. No reasonable

person, faced with the actual record before the ALJ, would so conclude. Hence, there is not substantial evidence to support the ALJ's RFC finding in this regard. Upon remand, the ALJ shall re-evaluate Plaintiff's RFC to account for his limited ability to finger and handle.

## V. CONCLUSION

A thorough review of the record indicates that three of Plaintiff's assertions of error have merit. Hence, this case must be remanded so that the ALJ can re-evaluate Plaintiff's RFC. Accordingly, an implementing Order and separate Order of Judgment follow.